IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOWER SALFORD TOWNSHIP, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | No. 09-cv-5081 |
| INTERNATIONAL FIDELITY | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM and ORDER**

**JOYNER, J.**                                                            **April 27, 2010**

    Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule Civil Procedure 12(b)(6) (Doc. No. 3) and responses thereto (Doc. No. 6, 7). For the reasons set forth in the following Memorandum, we grant Defendant's Motion.

**BACKGROUND**[1]

    Plaintiff, Lower Salford Township ("Plaintiff" or "the Township"), filed its Complaint against International Fidelity Insurance Company ("Defendant" of "IFIC") on November 4, 2009. Plaintiff seeks to recover damages from a maintenance bond agreement ("the Bond") in the amount of $149,000, insured by

---

[1] In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

1

Defendant. Plaintiff, Defendant, and T.H. Properties ("the Developer") signed the Bond, but the Developer is not party to this suit. The Developer entered into a maintenance agreement with Plaintiff on October 2, 2007, and was responsible for maintenance and repairs at Brownstone Mill (hereinafter "the Development Project"), located in the Township. Plaintiff, Defendant, and the Developer entered into the Bond pursuant to the maintenance agreement between Plaintiff and the Developer. The Developer was, and is, the principal on the Bond, and Plaintiff was, and is, the obligee on the Bond.

Under the Bond, the Developer guaranteed Plaintiff "against defective materials and workmanship in connection with [the Development Project]." According to the Bond, if Plaintiff discovers defective materials or workmanship, Plaintiff must notify the Developer and Defendant in writing within thirty days of the discovery of the defect. The Bond initially covered the period from October 3, 2007, through April 4, 2009, and was later extended through March 24, 2010.

Before the Bond reached its initial expiration date, Plaintiff's engineer inspected the Development Project for items that needed repair. The Plaintiff's engineer outlined these items in two letters to Plaintiff and copied to the Developer's Vice President. A January 30, 2009, letter outlined certain public improvement maintenance work to be performed by the

2

Developer on the Development Project. A March 23, 2009, letter from Plaintiff's engineer outlined landscaping maintenance also to be performed by the Developer at the Development Project.

In mid-June of that year, the Developer had not completed all of the maintenance items from Plaintiff's engineer's letters. On June 18, 2009, Plaintiff provided written notice to the Developer that it had failed to "maintain certain Improvements (as that term is defined in the Maintenance Agreement) . . . ." The June letter also states, "If you [the Developer] do not correct these conditions within ten days of your receipt of this letter, the Township will have no choice but to notify [Defendant] of the Developer's default under the Maintenance Agreement and will request payment [from the Bond]."[2] The Developer did not address the specific maintenance requests. On July 21, 2009, Plaintiff provided Defendant written notice that the Developer was in default under the maintenance agreement because the Developer had not repaired or corrected all of the conditions listed in its June 18, 2009, letter.

Despite the notice that Plaintiff provided to the Developer and Defendant, to this date Defendant has not issued payment to Plaintiff. Therefore, Plaintiff filed its Complaint claiming

---

[2] The maintenance agreement between the Developer and Plaintiff states that upon receiving notice of repairs, the Developer must commence work on the maintenance items within ten days. The maintenance agreement further states that upon commencing work, the Developer must work diligently to complete the maintenance or repairs.

3

that Defendant materially breached the terms of the Bond.

Defendant, however, claims that Plaintiff failed to satisfy a condition precedent to asserting a claim under the Bond, and because of this, Plaintiff does not state a claim upon which relief can be granted.  Therefore, Defendant asks the Court to dismiss Plaintiff's claim.

**STANDARD OF REVIEW**

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a defendant may assert by motion that the plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  In other words, the plaintiff must provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a particular cause of action.  Id. at 234.  In ruling

on a Rule 12(b)(6) motion to dismiss, the court may consider documents integral to or explicitly relied upon in the complaint. In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

**DISCUSSION**

The parties do not dispute that Plaintiff has stated a claim for breach of contract.[3]  Instead, Defendant claims that relief cannot be granted for breach of contract because Plaintiff failed to provide timely notice to Defendant as required by the Bond. Plaintiff asserts that notice was timely.

Under Pennsylvania law, a surety bond is a contract, and the language of the bond determines the surety's rights and liabilities. Beckwith Mach. Co. v. Nat'l Union Fire Ins. Co., 890 A.2d 403, 406 (Pa. Super. Ct. 2005).  While construing the surety agreement's intent from the language taken as a whole, regard should be given to the attendant circumstances. Peter J. Mascaro Co. v. Milonas, 166 A.2d 15, 17 (Pa. 1960).  However, the obligation under a bond cannot be interpreted to extend beyond the plain, normal meaning of the words used. Miller v. Commercial Elec. Constr., Inc., 297 A.2d 487, 488 (Pa. Super. Ct. 1982).

Where the policy carries an ambiguous provision, the policy

---

[3]    In Pennsylvania, a claim for breach of contract requires that the plaintiff demonstrate (1) the existence and essential terms of a contract; (2) a breach of that contract; and (3) subsequent damages from that breach. Omicron Systems v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004).

5

should be construed against the insurer — the drafter of the agreement. Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). Contractual language is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense, or if it is subject to more than one reasonable interpretation when applied to a particular set of facts. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). A provision of an insurance contract, then, is ambiguous if reasonably intelligent persons, considering it in the context of the whole policy, would differ regarding its meaning. State Farm Mut. Auto. Ins. Co. v. Moore, 544 A.2d 1017, 1019 (Pa. Super. Ct. 1988). If the contract is ambiguous, then the fact finder may look to parol evidence to determine the contract's meaning. Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390-91 & n.5 (Pa. 1986). However, where the bond's language is clear and unambiguous, a court must give effect to that language. Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3d Cir. 2006).

According to the Bond,

> The condition of this obligation is such that, whereas the Principal [the Developer] entered into a contract [the maintenance agreement between the Developer and Plaintiff] with the Obligee [Plaintiff] for: Brownstone Mill-Site Improvements. And whereas, the Obligee requires a guarantee from the Principal against defective materials and workmanship in connection with said Brownstone Mill-Site Improvements. NOW,

6

> THEREFORE, if the Principal shall make any repairs or
> replacements which may become necessary during the
> period of Eighteen Months (18) [f]rom October 3, 2007
> through April 4, 2009 because of defective materials or
> workmanship in connection with said contract of which
> defectiveness the Obligee shall give the Principal and
> Surety [Defendant] written notice within (30) thirty
> days after discovery thereof, then this obligation
> shall be void; otherwise it shall be in full force and
> effect.

Defendant argues that the Bond requires Plaintiff to notify the Developer and Defendant within thirty days of discovering the need for maintenance or repairs. Once Plaintiff's engineer created a list of improvements for the Development Project, Defendant believes the thirty-day notice period began running. Defendant also argues that Plaintiff should have copied Defendant on those lists of Improvements.

Plaintiff, however, asserts that the Bond requires notice within thirty days once Plaintiff has discovered defective materials or workmanship from maintenance already performed by the Developer. According to Plaintiff, the engineer's lists of improvements were not lists of defects in the Developer's workmanship or materials. Plaintiff believes the discovery of the "defect" occurred in the Developer's workmanship once the Developer did not commence repairs within ten days following the June 18, 2009, notification, as required under the maintenance agreement between Plaintiff and the Developer. To Plaintiff, the Bond's thirty-day notice requirement began running once the Developer's ten-day period to commence work ended.

The Court rejects both parties' interpretation of the Bond. The Bond's terms are unambiguous. According to the Bond, the Developer guaranteed against "defective materials and workmanship." Webster's Dictionary defines "defective" as "having a defect: faulty," as in "defective wiring." Webster's II New Riverside University Dictionary 355 (1994). The dictionary defines "workmanship" as "the art, skill, or technique of a workman" or "the quality of such art, skill, or technique," as in "pewter of fine workmanship"; "something produced by a workman"; or "the product of an effort of endeavor." Id. at 1328. Through the phrase "defective materials and workmanship," the Developer guaranteed that when making improvements, it would not use flawed or faulty materials. It also guaranteed that the end product would not have imperfections. The phrase in the Bond requires the Developer to have already performed or executed a task in which the Plaintiff must then discover a defect in the Developer's materials or in the quality of Developer's work. A failure to perform is not a defect in workmanship, and the plain terms of the Bond do not insure against a failure to perform.

Plaintiff and Defendant disagree as to when the Bond's thirty-day notice period was triggered. However, the thirty-day notice provision was never activated because there was no discovery of defective workmanship or materials of maintenance already completed. The Bond does not state that it protects

8

against a failure to perform.  If the parties meant for the Bond to protect against a failure to perform or complete tasks, then all parties could have incorporated that language into the Bond. Although the maintenance agreement mentions diligent performance of maintenance items, the terms of the maintenance agreement are not incorporated into the Bond and therefore cannot be considered.  Additionally, because the Bond is unambiguous, there is no need to analyze the maintenance agreement between Plaintiff and the Developer to clarify the Bond's terms.

Plaintiff argues that it provided the Developer with maintenance requests, and the Developer failed to finish all maintenance items.  Plaintiff does not argue that there were defects in the materials or workmanship in the tasks the Developer completed.  Plaintiff, nonetheless, seeks recourse through the Bond from Defendant.

Plaintiff has not discovered a defect in materials or workmanship of the improvements already performed by the Developer.  Although Plaintiff argues that its "discovery" was the Developer's failure to complete repairs from the engineer's lists, the discovery of a failure to perform is not the discovery of a defect in work already performed.  Plaintiff, therefore, has no recourse under the terms of the Bond, and Defendant's Motion to Dismiss Plaintiff's breach of contract claim is granted.